UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND STANIFORTH,<br><br>                                   Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                                   Defendant. | Case No.:  23cv449-JM-MMP<br><br>**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Presently before the court is Defendant the United States of America's Motion for Summary Judgment (Doc. No. 15).  Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for resolution without oral argument.  Having considered the Parties' arguments, the evidence, and the law, the court rules as follows.

## BACKGROUND

### I.    Factual Background

The instant action arises from a motor vehicular collision involving Plaintiff and a United States Border Patrol Agent.

#### A.    The "G Road"

In 2013, Plaintiff purchased a property located at 875 Tierra Del Sol in Boulevard, California.  (Doc. Nos. 15 at 3; 15-2 at 59:15–16, 21–25).  The Tierra Del Sol property is

1

adjacent to a privately owned parcel of land known as Haagen's Ranch.  (Doc. Nos. 1 at ¶ 2; 15-2 at 59:17–23; 15-7 at 2; 20 at ¶ 4).  The Ranch includes a dirt road—referred to as the "G Road" by United States Border Patrol and the "Private Road" by the owners of Haagen's Ranch.  (Doc. Nos. 15-7 at 1–2; 20 at ¶ 3).  Plaintiff obtained permission to use the G Road from the caretakers of Haagen's Ranch sometime in 2013, when he purchased his property.  (Doc. Nos. 15-2 at 58:25–59:16; 20 at ¶¶ 7–8).

The G Road possesses "no trespassing" and "private road" signs, but lacks any traffic signs—such as a stop sign, yield sign, or posted speed limit.  (Doc. Nos. 15-2 at 57:8–14; 20 at ¶ 4).  Although the road is approximately thirty-feet wide and possesses enough space for two cars to pass in each direction, there are no designated traffic lanes.  (Doc. Nos. 15-2 at 58:5–9; 20 at ¶ 3).

The Department of Homeland Security, United States Customs and Border Protection obtained an easement to the G Road in 2012, for law enforcement purposes. (Doc. Nos. 15-7 at 2; 17-5 at 13–14; 20 at ¶ 9).  Since that time, Border Patrol Agents have used the G Road for many years.  (Doc. No. 15-2 at 69:7–10).

### B.   The Vehicular Collision

On June 23, 2021, Plaintiff was riding his 2005 KTM EXC dirt bike, traveling north on the G Road.  (Doc. Nos. 1 at ¶ 2; 15-2 at 24:5–6; 15-4 at 9; 17-6 at 4).  At the same time, Border Patrol Agent Cesar Camacho was driving a government-owned 2020 Chevrolet Tahoe, traveling south on the G Road.  (Doc. Nos. 1 at ¶ 3; 15-3 at 1; 15-4 at 9; 17-6 at 4). The two vehicles collided with each other.  As a result of the collision, Plaintiff suffered a broken right leg and injured his left shoulder.  (Doc. No. 17-7 at 97:12–14, 18–23). Plaintiff continues to experience pain preventing him from performing certain activities. *Id.* at 182:2–186:25.

## II.   Procedural Background

On March 10, 2023, Plaintiff filed the Complaint in this action asserting a single cause of action for negligence under the Federal Tort Claims Act ("FTCA").  (Doc. No. 1). On June 16, 2023, the United States filed its Answer to Plaintiff's Complaint.  (Doc. No.

23cv449-JM-MMP

4).  Fact discovery and expert discovery closed in this case on December 15, 2023 and March 25, 2024, respectively.  (Doc. No. 9 at 2, 4).

Following the close of discovery, the United States filed the instant Motion for Summary Judgment.  (Doc. No. 15).  Plaintiff filed a Response (Doc. No. 17) and the United States filed a Reply (Doc. No. 21).  The court also granted Plaintiff leave to file supplemental evidence in support of its Response. (Doc. Nos. 18; 19).  The court considers this matter now fully briefed and ripe for resolution.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*

Material facts are those that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  *See id.*  "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden."  *Id.* at 254.  The question is "whether a jury could reasonably find *either* that the [moving party] proved his case by the quality and quantity of evidence required by the governing law *or* that he did not."  *Id.* (emphasis in original).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Id.* at 255.  "[A]ll justifiable inferences are to be drawn in [the nonmovant's] favor."  *Id.*

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

23cv449-JM-MMP

which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading," *Liberty Lobby*, 477 U.S. at 248, and affidavits or declarations supporting his opposition "must be made on personal knowledge," Fed. R. Civ. P. 56(c)(4). The opposing party need not show the issue will be resolved conclusively in its favor. *See Liberty Lobby*, 477 U.S. at 248–49. "[A]ll that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249. Summary judgment should, therefore, not be granted "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir. 1980).

## ANALYSIS

### I.   Evidentiary Objections

At the outset, the court first addresses the objections Plaintiff lodged to evidence submitted by the United States. Plaintiff objects to portions of a California Highway Patrol report prepared by Officer E. Ketchum. (Doc. Nos. 15-4 at 9; 17-1 at 2). The report contains a summary of what Plaintiff purportedly relayed to Officer Ketchum regarding the collision. *Id.* Plaintiff contends this portion of Officer Ketchum's report should be excluded as hearsay. (Doc. No. 17-1 at 2).

Plaintiff's objections are **OVERRULED**. "A police report, including the police officer's statements and observations, are admissible in civil cases under the public records hearsay exception" of Rule 803(8). *Thompson v. Polaris Indus.*, No. CV-16-02868-PHX-DJH, 2019 U.S. Dist. LEXIS 83665, at *24 (D. Ariz. May 17, 2019); *Blanton v. Cty. of Sacramento*, No. 2:09-cv-01832-MCE-CKD, 2012 U.S. Dist. LEXIS 94606, at *3 n.4 (E.D. Cal. July 6, 2012) ("The police officers' statements and observations recorded in a police report are admissible, as is the summary of [plaintiff's] statement made to [the officer] under the public-records hearsay exception.").

4

The summary of Plaintiff's statements, memorialized by Officer Ketchum, is also admissible as a party-opponent admission under Rule 801(d)(2)(A). *See Burton v. United Servs. Auto. Ass'n*, No. CV-22-00837-PHX-DWL, 2023 U.S. Dist. LEXIS 150285, at *14 (D. Ariz. Aug. 25, 2023) ("Plaintiff's statement to the officer falls outside the definition of hearsay because it is a party-opponent admission under Rule 801(d)(2)(A) and the police report memorializing the party-opponent admission qualifies as a public record under Rule 803(8)."); *see also Liberty Ins. Corp. v. Hohman*, No. 2:21-cv-01622-GMN-VCF, 2023 U.S. Dist. LEXIS 91622, at *10 (D. Nev. May 24, 2023); *Thompson*, 2019 U.S. Dist. LEXIS 83665, at *25.

# I. Whether Plaintiff's Negligence Claim is Barred by California's Primary Assumption of the Riskfpred Doctrine

The government argues the court should enter summary judgment in its favor on Plaintiff's negligence claim, arguing Plaintiff's claim is barred by California's primary assumption of the risk doctrine. (Doc. No. 15 at 7–9). In response, Plaintiff contends the assumption of the risk doctrine does not apply in this case because Plaintiff and Agent Camacho were not co-participants in a recreational activity. (Doc. No. 17 at 13–17). In the alternative, Plaintiff contends that even if Plaintiff and Agent Camacho were co-participants in a recreational activity, the assumption of the risk doctrine would *still* not apply because Agent Camacho's conduct was reckless. *Id.* at 17–19. The court addresses each of these arguments below.

## A. Overview of Applicable Legal Principles

The court begins with an overview of the FTCA and California's primary assumption of risk doctrine.

### 1. The FTCA

"The United States can be sued only to the extent that it has waived its sovereign immunity." *Conrad v. United States*, 447 F.3d 760, 764 (9th Cir. 2006). The FTCA "grants such a waiver." *Id.*; *see Colony First Fed. Sav. & Loan Asso. v. Fed. Sav. & Loan Ins. Corp.*, 643 F. Supp. 410, 416 (C.D. Cal. 1986) ("The FTCA is a limited waiver of sovereign

5

immunity with respect to claims sounding in tort against the United States.").  "The FTCA authorizes private tort actions against the United States 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'"  *Jachetta v. United States*, 653 F.3d 898, 904 (9th Cir. 2011) (quoting 28 USCS § 1346 (b)(1)).  Accordingly, "the FTCA directs [the court] to look to the law of the state in which the government official committed the tort to determine the scope of sovereign immunity."  *Schwarder v. United States*, 974 F.2d 1118, 1122 (9th Cir. 1992).  In this case, the applicable law is California law.

### 2.   *California's Primary Assumption of Risk Doctrine*

"The general rule in California is that '[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person[.]'"  *Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 771 (2011) (quoting Cal Civ Code § 1714(a)).  "In other words, each person has a duty to use ordinary care and is liable for injuries caused by his failure to exercise reasonable care in the circumstances[.]"  *Id.* (internal quotation marks omitted).

 "[I]n order to establish liability on a negligence theory [under California law], a plaintiff must prove duty, breach, causation and damages."  *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205 (2001).  "Primary assumption of the risk, as an exception to the general duty of care rule, is a defense to negligence."  *Estate of McNeil v. FreestyleMX.com, Inc.*, 177 F. Supp. 3d 1260, 1268 (S.D. Cal. 2016); *Childs v. Cty. of Santa Barbara*, 115 Cal. App. 4th 64, 69 (2004) ("The doctrine of 'primary' assumption of risk developed as an exception to the general rule that all persons have a duty to use due care to avoid injury to others.").

The doctrine "articulates what kind of *duty* is owed and to whom."  *Shin v. Ahn*, 42 Cal. 4th 482, 499 (2007) (emphasis in original).  "Primary assumption of the risk arises when, as a matter of law and policy, a defendant owes no duty to protect a plaintiff from particular harms."  *Honeycutt v. Meridian Sports Club, LLC*, 231 Cal. App. 4th 251, 257

(2014).  The doctrine "operates as a complete bar to recovery."  *Branco v. Kearny Moto Park, Inc.*, 37 Cal. App. 4th 184, 190 (1995).

### B.      Whether the Primary Assumption of Risk Doctrine Applies

The court next considers whether the primary assumption of risk doctrine applies in this case.  *See Ford v. Polaris Indus., Inc.*, 139 Cal. App. 4th 755, 766 (2006) ("The existence and scope of a defendant's duty of care in the context of primary assumption of the risk is a legal question to be decided by the court.").

Under California law, "[t]he determination whether the defendant owes a legal duty to protect the plaintiff from a particular risk of harm turns on the *nature of the activity in which the defendant is engaged and the relationship of the defendant and the plaintiff to that activity.*"  *Ford*, 139 Cal. App. 4th at 767 (emphasis in original); *Knight v. Jewett*, 3 Cal. 4th 296, 309 (1992) ("[T]he question [of] whether the defendant owed a legal duty to protect the plaintiff from a particular risk of harm does not turn on the reasonableness or unreasonableness of the plaintiff's conduct, but rather on the nature of the activity or sport in which the defendant is engaged and the relationship of the defendant and the plaintiff to that activity or sport.").

#### 1.      Fundamental Nature of the Activity

With the above legal standard in mind, the court first looks to the "nature of the activity" to which the Parties were engaged.

California courts have typically applied the primary assumption of the risk doctrine in a sports setting, where the doctrine "precludes liability for injuries arising from those risks deemed inherent in a sport."  *Avila v. Citrus Cmty. Coll. Dist.*, 38 Cal. 4th 148, 161 (2006) (applying doctrine to baseball); *see Cheong v. Antablin*, 16 Cal. 4th 1063 (1997) (applying doctrine to skiing); *Fortier v. Los Rios Cmty. Coll. Dist.*, 45 Cal. App. 4th 430, 439 (1996) (applying doctrine to football); *Regents of Univ. of Cal. v. Superior Court*, 41 Cal. App. 4th 1040 (1996) (applying doctrine to rock climbing); *Knight v. Jewett*, 3 Cal. 4th 296 (1992) (applying doctrine to touch football); *Stimson v. Carlson*, 11 Cal. App. 4th

1201 (1992) (applying doctrine to sailing); *Galardi v. Seahorse Riding Club*, 16 Cal. App. 4th 817 (1993) (applying doctrine to equestrian sport).

"When an inherent sports risk is involved, the defendant is liable only if he or she intentionally injures another player or engages in conduct that is so reckless that it is totally outside the range of the ordinary activity involved in an active sport." *Stimson*, 11 Cal. App. 4th at 1205. "By eliminating liability for unintended accidents, the doctrine ensures that the fervor of athletic competition will not be chilled by the constant threat of litigation from every misstep, sharp turn and sudden stop." *Id.* at 1206.

This is not to say, however, that the doctrine applies *only* to competitive sports. *See Amezcua v. L.A. Harley-Davidson, Inc.*, 200 Cal. App. 4th 217, 229 (2011) ("[T]he "primary assumption of risk doctrine is not limited to competitive sports[.]"). Instead, California courts have also applied the doctrine to "recreational activities," "if the activity is done for enjoyment or thrill, requires physical exertion as well as elements of skill, and involves a challenge containing a potential risk of injury." *Record v. Reason*, 73 Cal. App. 4th 472, 482 (1999); *see also Summer J. v. United States Baseball Fed'n*, 45 Cal. App. 5th 261, 269 n.7 (2020) ("[T]he primary assumption of risk doctrine is not limited to activities classified as sports, but applies to any physical recreational activity that involves an inherent risk of injury."). Other California courts have extended the doctrine even further, holding the doctrine "is not limited to recreational activities," but applies to *any* activity "involving an inherent risk of injury to voluntary participants . . . where the risk cannot be eliminated without altering the fundamental nature of the activity." *Fazio v. Fairbanks Ranch Country Club*, 233 Cal. App. 4th 1053, 1059 (2015) (internal quotation marks omitted).

Here, Plaintiff contends he was not engaged in an activity that would fall within the primary assumption of risk doctrine, because he was using his dirt bike solely as a "means of transportation" which is not "participation in a sport." (Doc. No. 17 at 13–14). In support of this argument, Plaintiff cites to the California Court of Appeal's decision in *Childs v. Cty. of Santa Barbara*, 115 Cal. App. 4th 64 (2004). *Id.*

8

In *Childs*, a minor plaintiff suffered a serious injury riding a scooter on the sidewalk of a residential street.  115 Cal. App. 4th at 68.  The court found the primary assumption of risk doctrine did not apply in that case, because plaintiff was not "engaged in a sport or sports-related recreational activity" covered by the doctrine.  *Id.* at 70–71.  In making this decision, the court noted there was no evidence plaintiff was "riding at any particular speed, or with other children in a structured or unstructured contest such as a race, or was testing the limits of her ability or the scooter, or that she was attempting any trick or maneuver requiring skill."  *Id.* at 71.  Further, the court noted "the characteristics of the scooter show that it was not a formidable means of transportation."  *Id.*

Here, like in *Childs*, Plaintiff "may have been engaged in no more than the diversion of getting from one place to another."  *Id.*  Riding a dirt bike to get from one place to another is not sufficient, by itself, to trigger the doctrine.  *See e.g.*, *Moser v. Ratinoff,* 105 Cal. App. 4th 1211, 1221 (2003) (reasoning that "normal automobile driving" would not be an activity covered by the primary assumption of risk doctrine, even though driving "requires skill, can be done for enjoyment, and entails risks of injury.").

Nevertheless, *off-roading* on a dirt bike on an unpaved dirt road in a recreational manner—as Plaintiff *may* have elected to do in this case—involves physical exertion, elements of skill, and a potential risk of injury that differ substantially from riding a child's scooter on the public sidewalk of a residential road.  *See Peart v. Ferro*, 119 Cal. App. 4th 60, 75 n.6 (2004) ("Factually, the inherent risks of a child riding a scooter on a residential sidewalk cannot be compared to those involved in [operating a personal watercraft].").

There is a significant difference between traversing from one point to another at a reasonable speed using a motorized bike as a means of transportation and the *sport* of *off-roading*.  Indeed, "[i]t cannot be seriously disputed that off-roading is an inherently dangerous activity."  *Mattle v. United States*, No. CV 12-10157-JFW (FFMx), 2013 U.S. Dist. LEXIS 190853, at *29 (C.D. Cal. Nov. 26, 2013);  *see e.g.*, *Foltz v. Johnson*, 16 Cal. App. 5th 647, 657 (2017) ("Off-road riding involves the inherent risk that one will fall off or be thrown from one's bike."); *Garcia v. United States*, No. CV 12-0942 PA (FMOx),

2013 U.S. Dist. LEXIS 191585, at *22 (C.D. Cal. Jan. 18, 2013) ("Driving at unsafe speeds, becoming airborne, and collisions are inherent risks involved in off-roading."); *Distefano v. Forester*, 85 Cal. App. 4th 1249, 1264 (2001) ("[T]he sport of off-roading involves inherent risks that the participants in this recreational activity may be involved in inadvertent motor vehicle collisions and may suffer serious injury or death."); *see also, e.g.*, *Estate of McNeil v. FreestyleMX.com, Inc.*, 177 F. Supp. 3d 1260, 1269–70 (S.D. Cal. 2016) (applying primary assumption of risk doctrine to freestyle motorcross); *Amezcua*, 200 Cal. App. 4th at 231–32 (applying doctrine to "organized, noncompetitive, recreational motorcycle riding.").

With this difference in mind, the court notes there is evidence in the record suggesting Plaintiff *may* have been off-roading on his KTM bike in a recreational manner at the time of the collision. The record is replete with references illustrating Plaintiff considered riding his KTM bike a recreational activity. Plaintiff testified he used his KTM bike "exclusively for recreation." (Doc. No. 15-2 at 31:22–24). Plaintiff characterized the activity of "rid[ing] a motorcycle on a dirt path" as "[h]aving fun." *Id.* at 19:11–14. Plaintiff testified he purchased the Tierra Del Sol property *in order* to ride motorcycles on dirt roads. *Id.* at 60:4–7. Plaintiff further testified he *could* have reached his destination the day of the collision via a paved road in his car, but made the decision to drive off-road on his bike instead. (Doc. No 17-7 at 44:2–7). More importantly, as the court sets forth in detail below, there are genuine material factual disputes as to the speed and manner in which Plaintiff was riding his bike. *Infra* at 13–15.

As in *Childs*, the question of whether the doctrine applies in this litigation depends on various factors such as, the speed Plaintiff was riding, whether Plaintiff was testing the limits of his KTM bike, or whether he was attempting any trick or maneuver requiring skill. 115 Cal. App. 4th at 71. In other words, Plaintiff *may* have elected in to participate in an activity that possessed serious, inherent risks, including increased risks of accidents including loss of control of the dirt bike and severe injuries in the event of an accident. *See Swigart v. Bruno*, 13 Cal. App. 5th 529, 537 (2017) ("[P]rimary assumption of risk is a

10

defense that relieves a defendant of any duty to the plaintiff when the plaintiff is injured due to a risk that is inherent in an activity *in which the plaintiff chose to participate*.") (emphasis added).  On the limited record before it, however, the court cannot conclusively determine whether Plaintiff was operating his KTM bike prudently solely as a matter of conveyance or as a dirt bike in recreational mode.

### 2.   *Defendant's Relationship to the Activity*

The court next considers Defendant's relationship to the activity at issue.  In his Opposition, Plaintiff contends the primary assumption of risk doctrine does not apply in this case because Agent Camacho was not a co-participant in a recreational activity.  (Doc. No. 17 at 16–17).   More specifically, Plaintiff contends Agent Camacho cannot be considered a "co-participant" because he was *not* engaging in a recreational activity—but was, instead, driving his work vehicle to his workstation.  *Id.*

The court does not agree.  The primary assumption of risk doctrine is more complex than simply applying the doctrine "only and always when (i.e., because) the defendant is a coparticipant in a sports activity[.]"  *Allan v. Snow Summit, Inc.*, 51 Cal. App. 4th 1358, 1368 (1996).  This "simplistic reasoning is both logically and legally incorrect."  *Id.* Indeed, California courts have applied the doctrine to delineate the duties of defendants who are *clearly* not engaging in a recreational activity.  *See e.g.*, *Nalwa v. Cedar Fair, L.P.*, 55 Cal. 4th 1148, 1162–63 (applying doctrine to define duty of amusement park owner); *Lupash v. City of Seal Beach*, 75 Cal. App. 4th 1428, 1436–39 (1999) (applying doctrine to define duties of instructor to swimmer participating in junior lifeguard competition); *Aaris v. Las Virgenes Unified Sch. Dist.*, 64 Cal. App. 4th 1112, 1117 (1998) (rejecting argument primary assumption of risk doctrine does not apply where negligence action was brought against instructor or coach, as opposed to sports coparticipant).

The court notes, however, these cases have generally assumed a pre-existing or special relationship between the parties at issue—*e.g.*, instructor to student.  As such, they are not directly analogous to the instant one.  Nevertheless, it is clear "[t]he relationship of the parties to the activity and how that affects the duty of care will vary greatly depending

11

on the facts of any given case." *Mastro v. Petrick*, 93 Cal. App. 4th 83, 90 n.4 (2001); *Peart v. Ferro*, 119 Cal. App. 4th 60, 72 (2004) ("Duties with respect to the same risk may vary depending on what role was played in the sporting activity by a particular defendant, whether that role be as coparticipant, passive observer, instructor, coach, owner of the venue in which the sport is played, or supplier of the equipment used in the sport.").

The California Court of Appeal's decision in *Mastro v. Petrick*, 93 Cal. App. 4th 83, 90 (2001) is instructive. *Mastro* involved the tort liability of a defendant snowboarder who collided with plaintiff skier while both were descending the same mountainside. *Id.* at 85. The *Mastro* court confronted the question of whether, under the primary assumption of risk doctrine, defendant snowboarder owed any duty of care to plaintiff skier. *Id.* at 87–91. The court found this question did not turn on whether plaintiff and defendant were labeled as "co-participants" in the same sport. *Id.* at 89. It also did not turn on whether plaintiff and defendant "were engaged in the same *general activity* or sport." *Id.* Instead, defendant's duty of care depended on the risks inherent in the activity he was engaging in. *Id.* at 90. The *Mastro* court found defendant owed no duty of care to plaintiff, but instead, "should not be restrained or inhibited from vigorously engaging in his sport (snowboarding) because of the presence of skiers on the same slope." *Id.* at 91. "Put more generally, one who is pursuing his sport in an appropriate venue owes no duty of care to those who choose to occupy the same venue to engage in their (possibly different) activity simultaneously." *Id.* at 90.

Here it is indisputable that at the time of the collision, Agent Camacho was operating a vehicle off-road on the G Road, not for recreation, but for work-related purposes. Given the easement granted to the government, Agent Camacho was entitled to do so. Applying the *Mastro* principles to this care, if the court were to conclude that Plaintiff was engaged in the *sport* of off-roading at the time of the collision, looking to the nature of the activity and Agent Camacho's relationship to that activity (traversing, by automobile, the same private road as Plaintiff), inadvertent collisions with other users of the road *may* occur. To the extent Plaintiff may have been "assuming a risk" by engaging in the *sport* of off-roading

12

on a dirt road other third parties frequently used, he was assuming the risk of potentially "occupying a venue with others that owe him no duty of care." *Id.* at 90. However, if Plaintiff and Agent Camacho were simply both traversing the same dirt road as "means of transportation," it would appear to the court that traditional negligence principles would, instead, apply.

Nevertheless, as the court already noted above, the question of primary assumption of the risk is fraught with many genuine issues of material fact—including how the accident occurred—for the court to rule on the applicability of the doctrine at this point.

### C.   Whether Agent Camacho's Conduct was Reckless

Plaintiff next contends that even if the primary assumption of risk doctrine applies, there is a triable issue as to whether Agent Camacho's conduct was reckless, thereby putting Plaintiff's claims outside the doctrine's scope. (Doc. No. 17 at 17–19).

The primary assumption of risk doctrine "does not grant unbridled legal immunity to all defendants participating in [an] activity." *Campbell v. Derylo*, 75 Cal. App. 4th 823, 827 (1999). A defendant may still be found liable if "he intentionally injures the plaintiff or engages in conduct so reckless as to be totally outside the range of the ordinary activity involved in the sport or activity." *Saville v. Sierra Coll.*, 133 Cal. App. 4th 857, 866 (2005). Reckless conduct, "unlike negligence, involves more than inadvertence, incompetence, unskillfulness, or a failure to take precautions but rather rises to the level of a conscious choice of a course of action with knowledge of the serious danger to others involved in it." *Towns v. Davidson*, 147 Cal. App. 4th 461, 470 (2007) (internal quotation marks omitted).

In determining whether there is a triable question as to whether Agent Camacho acted recklessly, the court must consider a number of factors, including the nature of the activity and the totality of circumstances surrounding Agent Camacho's conduct and Plaintiff's injury. *Shin*, 42 Cal. 4th at 499. Here, however, the circumstances surrounding the collision in this case are heavily disputed.

The Parties dispute where the collision occurred. According to Plaintiff, the collision occurred as Agent Camacho was exiting the backside of a blind curve Plaintiff

13

had not yet entered.  (Doc. No. 17-6 at 5).  According to the government, the collision occurred as Plaintiff was coming around a "semi blind corner."  (Doc. No. 15-3 at 1; 15-4 at 9).

There is also a dispute as to the speed Plaintiff and Agent Camacho were traveling prior to colliding.  The government contends Agent Camacho was traveling at approximately fifteen miles per hour while Plaintiff was traveling at a "fast speed."  (Doc. No. 15-3 at 1).  In contrast, Plaintiff testified he was traveling approximately twenty miles per hour, while Agent Camacho was traveling approximately twenty-five to thirty miles per hour.  (Doc. No. 15-4 at 9; 17-7 at 80:9–11, 17–19).

Additionally, there is some question as to whether Agent Camacho saw or reasonably should have seen Plaintiff prior to the collision.  Agent Camacho reported Plaintiff had "just come around a couple of curves," was "traveling downhill," and "was leaving wide swaths of tire sign behind him" prior to the accident.  (Doc. No. 15-3 at 1).  Based on this report, Plaintiff contends as "motorcycles will leave clouds of dust following their path of travel on dirt roads"—Agent Camacho should have seen Plaintiff or these dust clouds at several points prior to colliding with him.  (Doc. No. 17-6 at 7).

The Parties also dispute how the vehicles collided.  According to the government, Agent Camacho attempted to apply his brakes and swerve to the right upon seeing Plaintiff.  (Doc. Nos. 15 at 4; 15-3 at 1).  At the same time, Plaintiff "made an abrupt turning movement" causing him to overturn and slide with the KTM bike until crashing into the front of Agent Camacho's vehicle.  (Doc. Nos. 15 at 4; 15-4 at 9).  In contrast, Plaintiff testified Agent Camacho did not brake prior to the collision and only turned slightly.  (Doc. No. 17-7 at 86:25–87:6).  Plaintiff further submits evidence casting doubt as to whether the KTM bike crashed into the front of Agent Camacho's vehicle.  (Doc. No. 17-6 at 6 ("A physical inspection of the subject 2020 Chevrolet Tahoe shows no sign of contact to the 'front' of the vehicle.")).

Finally, the court considers Agent Camacho's skill level.  *Shin*, 42 Cal. 4th at 500.  Agent Camacho testified he had been trained on driving on dirt roads and was familiar with

14

and followed the rules of the California driver handbook and California basic speed law. (Doc. No. 17-8 at 21:2–4; 30:20–33:5). Agent Camacho further testified he was familiar with driving the G Road and familiar with its various "corners, turns, and twists" and had encountered other vehicles on the road before. *Id.* at 62:11–63:2.

Despite the above, the government contends that even if all the above disputes were resolved in Plaintiff's favor, Agent Camacho's behavior would still not constitute reckless conduct. The court does not agree. Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could infer Agent Camacho saw Plaintiff at several points prior to the accident, made the decision to take a blind curve on the dirt road at twenty-five to thirty miles per hour regardless, and did not brake prior to colliding with Plaintiff—*despite* being both trained to drive on dirt roads and being familiar with the G Road. This is not a case where the record is "devoid of evidence from which a jury rationally could conclude" Agent Camacho's conduct was "outside the range of ordinary activity inherent" in off-roading. *Szarowicz v. Birenbaum*, 58 Cal. App. 5th 146, 169 (2020).

Rather, in light of the numerous factual disputes, the court finds the question of whether Agent Camacho did, or did not, act recklessly is more appropriately "a question the jury will ultimately resolve based on a more complete examination of the facts." *See Shin*, 42 Cal. 4th at 500; *see also, e.g.*, *Luna v. Vela*, 169 Cal. App. 4th 102, 112 (2008) (determining whether defendant breached limited duty not to increase risks inherent in volleyball required "application of the governing standard of care (the duty not to increase the risks inherent in the sport) to the facts of this particular case—*the traditional role of the trier of fact*.") (emphasis added). Because "triable issues of material fact" exist on the question of whether Agent Camacho was acting recklessly, "the matter should be resolved by the trier of fact, not the court as a matter of law." *Luna*, 169 Cal. App. 4th at 114.

For the above reasons, the court **DENIES** the government's motion for summary judgment on Plaintiff's negligence claim.

///

///

23cv449-JM-MMP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II. Whether Plaintiff's Claim for Non-Economic Damages is Barred by California Civil Code Section 3333.4

The government also moves for summary judgment on Plaintiff's request for non-economic damages, contending Plaintiff's request is barred by California Civil Code Section 3333.4. (Doc. No. 15 at 10–11).

California's "Civil Code section 3333.4 was enacted through passage of Proposition 213 in the November 5, 1996 General Election." *Allen v. Sully-Miller Contracting Co.*, 28 Cal. 4th 222, 225 (2002). "Known as The Personal Responsibility Act of 1996, Proposition 213 sought to restrict the ability of uninsured motorists, convicted drunk drivers, and convicted felons to recover for losses suffered in accidents." *Id.* "The initiative sought to ameliorate rising insurance premiums by encouraging uninsured motorists to obtain insurance." *Chude v. Jack in the Box Inc.*, 185 Cal. App. 4th 37, 46 (2010).

California Civil Code Section 3333.4 states, in relevant part, that:

> (a) [I]n any action to recover damages arising out of the operation or use of a motor vehicle, a person shall not recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages if any of the following applies:
>
> . . .
>
> (2) The injured person was the owner of a vehicle involved in the accident and the vehicle was not insured as required by the financial responsibility laws of this state.

California Civil Code Section 3333.4(a)(2).

Here, Plaintiff does not dispute he owned the KTM bike he was riding and that the bike was uninsured at the time of the collision. (Doc. No. 15-2 at 24:1–11; 146:15–20). Plaintiff instead contends California Civil Code Section 3333.4 does not apply because the incident occurred on a private road. (Doc. No. 17 at 19–22). In response, the government contends the G Road is subject to a permanent public easement and had been used openly by members of the public for many years prior to the collision. (Doc. Nos. 15 at 10–11;

16

21 at 5–7).  Conspicuously absent, however, is authority from *either* Party supporting Plaintiff's predicate position there exists a "private road" exception to California Civil Code Section 3333.4.[1]

Absent any authority from the Parties, the court is unable to determine a basis for the exception's existence.  First, Section 3333.4's plain language does not distinguish between private and public roads in precluding recovery for non-economic losses.  To the contrary, section 3333.4 explicitly states it applies "*in any action* to recover damages arising out of the operation or use of a motor vehicle."  CAL CIV CODE § 3333.4(a) (emphasis added).  And "[a]s section 3333.4 is a remedial statute, it must be construed broadly to [a]ffect its purposes."  *Chude*, 185 Cal. App. 4th at 46.

Secondly, the court looks to the California Supreme Court's decision in *Allen v. Sully-Miller Contracting Co.*, 28 Cal. 4th 222 (2002).  In *Allen*, "an uninsured [plaintiff] motorcyclist was injured in a single-vehicle accident while turning across an unmarked elevated 'bus pad' on a public roadway."  *Id.* at 225.  Although the roadway was public, it was undisputed a private company "retained responsibility" for providing traffic control "which entailed the installation and maintenance of road barriers and delineators to warn motorists and others of ditches and uneven road surfaces."  *Id.*

The *Allen* court addressed the question of: "whether section 3333.4 bars the motorcyclist from recovering noneconomic losses in his premises liability action against the private construction company that maintained control over the roadway at the time of the accident."  *Id.* at 225.  In so doing, the court found plaintiff's action fell squarely within California Civil Code Section 3333.4, holding there was "no evidence of legislative intent supporting [plaintiff's] proposal to carve out a private entity *or private property exception* to section 3333.4's application."  *Id.* at 230 (emphasis added).

---

[1] The court reminds the Parties it is not the court's job "to do the legal research that [the Parties have] omitted."  *Bretford Mfg. v. Smith Sys. Mfg. Corp.,* 419 F.3d 576, 581 (7th Cir. 2005).

23cv449-JM-MMP

Instead, as the court reasoned:

> The statutory language [of California Civil Code Section 3333.4] makes no distinction between public entity and private entity defendants in precluding recovery for noneconomic losses. To the contrary, section 3333.4 explicitly bars recovery of such losses "*in any action* to recover damages arising out of the operation or use of a motor vehicle" (*id.*, subd. (a), italics added), where the injured person was the owner of an uninsured vehicle involved in the accident or was the vehicle operator and cannot properly establish his or her financial responsibility (*id.*, subd. (a)(2), (3)).
>
> Likewise, nothing in the legislative history of the provision, as reflected in the ballot materials accompanying Proposition 213, suggests an intent to differentiate between public defendants and private defendants, or between dangerous conditions on public property and private property.

*Id.* (emphasis added); *see Mosley v. Romero*, 2021 Cal. Super. LEXIS 70573, *10 (applying section 3333.4 in accident involving uninsured motorist that took place in a private parking lot); *see also Valentich v. United States*, 194 F. Supp. 3d 1033, 1038 (E.D. Cal. 2016) ("In section 3333.4, the phrase 'a motor vehicle' includes *all motor vehicles*, without distinguishing between those used off-road, on city streets, or on the highway.") (emphasis added).

As in *Allen*, plaintiff "seeks to hold another financially responsible for his economic and noneconomic damages, even though he himself, as an uninsured motorist, could have avoided financial responsibility for any damages had he caused an accident while on the road." 28 Cal. 4th at 230. Neither Party has provided any reason for why the above conclusion would change based on the public or private character of the roadway in question.

Finally, despite the government's apparent concession, the court is unable to find any legal authority for Plaintiff's blanket statement motor vehicle insurance is not required on private property. (Doc. No. 17 at 19). Instead, California's "financial responsibility

law is intended to ensure that the victims of negligent drivers are compensated not only for bodily injury and property damage occasioned by accidents occurring on public streets and highways, but also for vehicular accidents resulting in damage to vehicles, buildings, or other property located on public *and private property off the streets and highways*." *Day v. City of Fontana*, 25 Cal. 4th 268, 275 (2001) (internal quotation marks omitted) (emphasis added).

In sum, in the absence of any authority to the contrary, the court declines to carve out a "private road" exception to California Civil Code Section 3333.4. For these reasons, the court **GRANTS** the government's motion for summary judgment on Plaintiff's request for non-economic damages.

## CONCLUSION

For the reasons stated above, the court **GRANTS-IN-PART** and **DENIES-IN-PART** the United States' Motion for Summary Judgment. Specifically:

1. The court **DENIES** the government's motion for summary judgment on Plaintiff's claim for negligence under California's assumption of the risk doctrine; and

2. The court **GRANTS** the government's motion for summary judgment on Plaintiff's entitlement to non-economic damages, as barred by California Civil Code Section 3333.4

**IT IS SO ORDERED.**

DATED: May 24, 2024

_____
JEFFREY T. MILLER
United States District Judge

19

23cv449-JM-MMP